## NATIONAL LABOR RELATIONS BOARD v. AMERICAN LAUNDRY MACHINERY CO.

### No. 13.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1945.

Alvin J. Rockwell, Gen. Counsel, Malcolm F. Halliday, Associate Gen. Counsel, A. Norman Somers, Ida Klaus, and Dominick L. Manoli, all of Washington, D. C., for petitioner.

Floyd C. Williams, of Cincinnati, Ohio, and Charles S. Wilcox and Charles D. Mercer, both of Rochester, N. Y., for respondent.

Before SWAN, CHASE, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

In 1942 the Congress of Industrial Organization began to organize a local union among respondent's employees. The employer's interference with such organizational efforts resulted in an order of the Board issued on December 4, 1942, which came before this court on a prior petition of the Board. On October 29, 1943, we granted enforcement of that order. National Labor Relations Board v. American Laundry Machinery Co., 2 Cir., 138 F.2d 889. Meanwhile and during the pendency of that proceeding in this court, the union renewed its campaign of organization and on June 30, 1943 the Board ordered an election to be held on July 28, 1943 to determine whether the respondent's employees desired to select the union as their collective bargaining representative. Some of the employees voluntarily organized an "unaffiliated" group to oppose the election.

The union lost the election. It immediately filed objections to the Regional Director's report of election and a charge of unfair labor practices by the employer. These two proceedings were consolidated for hearing by the Board. On July 4, 1944 the Board issued the order of which it seeks enforcement by its present petition. It found that during the three or four weeks preceding the election three of the respondent's supervisory employees questioned certain of their subordinates as to why they joined the union, made disparaging remarks regarding the union and threatened that economic reprisals might follow if the union won the election. The Board also found that a day or two before the election, the respondent's vice-president addressed the employees in a letter and a speech; and it concluded that these communications, considered in the light of the respondent's earlier anti-union activities and the current conduct of its three supervisory employees, carried at least an intimation that by voting for the union the employees would risk incurring the employer's displeasure and incite it to some unfavorable action against them. Accordingly the Board set aside the election of July 28, 1943, ordered the respondent to cease and desist from interfering in any manner with its employees in their right to self-organization, and directed it to mail to all of its employees a notice that it will not engage in the conduct from which it was ordered to desist, and to post similar notices in its plant.

The respondent's main contention is that the Board's findings of fact are not supported by substantial evidence. It is true that the three instances of alleged interference by supervisory employees are not by themselves very persuasive of coercion, and that the letter and speech of the vice-president taken literally do not necessarily suggest any threat of retaliation by the employer if the union be elected. However, it is the Board's province to interpret the words of the respondent's agents in the light of its former anti-union conduct, which included the unjustifiable discharge of four union men and the failure to reinstate them pursuant to the Board's order of December 4, 1942, which was being contested in this court. Against this background the Board inferred that the employees might understand the language of the speech and letter as containing covert threats of reprisal and as having coercive effect. We cannot say that such an inference is wholly unreasonable, and unless it is, there was no infringement by the Board of the employer's freedom of speech. See National Labor Relations Board v. Virginia Electric & Power Co., 314 U.S. 469, 477, 62 S.Ct. 344, 86 L.Ed. 348; Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 539, 63 S.Ct. 1214, 87 L.Ed. 1568; National Labor Relations Board v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 146 A.L.R. 1017, certiorari denied 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459. In the case last cited this court noted that the employer's expressions of opinion adverse to unionization were not colored by any history of anti-union activity.

It is also urged that the Board has exceeded its power in requiring the respondent to mail to all its employees a notice that it will not engage in the conduct from which it is ordered to cease and desist. While it is true that the Board is usually satisfied to require only the posting of notices in conspicuous places within the employer's plant, the Board's power extends to any remedy appropriate to redress the unfair labor practices which the employer is found to have committed. National Labor Relations Board v. Mackay Radio & Telegraph Co., 304 U.S. 333, 348, 58 S.Ct. 904, 82 L.Ed. 1381; National Labor Relations Board v. Falk Corp., 308 U.S. 453, 462, 60 S.Ct. 307, 84 L.Ed. 396. The present case is not one where the court should interfere with the measure of relief determined by the Board to be necessary, if, indeed, we may ever do so. See Herzfeld v. Federal Trade Commission, 2 Cir., 140 F.2d 207, 209, and cases there cited.

Finally, complaint is made of the Board's consolidation of the representation case (objection to the election) and the case on the charge of unfair labor practices, but neither the grounds for such complaint nor any prejudice to the respondent resulting therefrom are made apparent to us. On the contrary, such practice would seem to be a commendable method of saving time and labor.

An order of enforcement will be entered.