NATIONAL LABOR RELATIONS BOARD
v. BIRD MACH. CO.

No. 4219.

Circuit Court of Appeals, First Circuit.

May 20, 1947.

Owsley Vose, N.L.R.B., of Washington, D. C. (Gerhard P. Van Arkel, Gen. Counsel, Morris P. Glushein, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Frances Lopinsky, all of Washington, D. C., of counsel), for petitioner.

Richard J. Walsh, of Boston, Mass. (Richard J. Cotter, Daniel F. Sullivan, Allan Sesarman, and Warner, Stackpole, Stetson & Bradlee, all of Boston, Mass., of counsel), for respondent.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

The National Labor Relations Board, pursuant to Section 10(e) of the National Labor Relations Act of 1935, 49 Stat. 449, 29 U.S.C.A. § 160(e), has petitioned this court for enforcement of its order of January 9, 1946 directed against Bird Machine Company, a Massachusetts corporation. The respondent admits that its business is such as to make it subject to the Act and hence no question of jurisdiction arises. The Board found that respondent had violated §§ 8(1) and 8(3) of the Act by engaging in certain unfair labor practices and by reason of the discriminatory discharge of one Gilbert I. Favor. The order of the Board requires respondent to cease and desist from its unfair labor practices and to offer reinstatement with back pay to Favor. The sole question for our consideration is whether the Board's order is supported by substantial evidence.

On April 20, 1944 respondent announced to its employees a job evaluation plan which would govern wage increases thereafter. Some dissatisfaction resulted from the inauguration of this plan since in many cases expected wage increases did not materialize. Shortly thereafter union activity commenced which culminated in a demand for collective bargaining negotiations by the United Steelworkers of America (C.I.O.) which claimed that it had been designated by the majority of an alleged appropriate unit of the employees. Respondent questioned the majority representation of the Union and on May 4, 1944 a representation proceeding was commenced by the Union with the Board. The Union lost the Board election which was conducted on August 25, 1944. On September 8, the Union withdrew a protest on the election and filed charges of unfair labor practices. The Board subsequently on January 13, 1945 issued its complaint against respondent; a hearing was had in the same month before a Trial Examiner who filed an Intermediate Report setting forth his findings of fact and conclusions of law which the Board upon review adopted with certain modifications.

In support of its finding of unfair labor practices on the part of respondent the Board found that the respondent's supervisory employees indulged in a course of conduct consisting of disparaging statements concerning the Union and its proponents in the plant and of threats that various rights and privileges now enjoyed by the employees would be curtailed or eliminated if the Union should be successful in organizing the plant. The respondent claims that testimony concerning the disparaging and vulgar remarks was offset by the denials of its witnesses but where conflicting evidence exists it is for the Board and not the court to weigh the evidence and adjudge the credibility of the witnesses. See N.L.R.B. v. Link-Belt Co., 1941, 311 U.S. 584, 597, 61 S.Ct. 358, 85 L.Ed. 368; N.L.R.B. v. Franks Bros. Co., 1 Cir., 1943, 137 F.2d 989, 991, affirmed 1944, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 435. And the Board may credit its own witnesses to the exclusion of others. See N.L.R.B. v. Au-

burn Foundry, Inc., 7 Cir., 1941, 119 F.2d 331, 333. Whether the disparaging and bawdy remarks alone, particularly in view of the alleged bantering atmosphere said to exist in the plant, would be sufficient to support a finding of coercion is a question that fortunately we need not decide. Cf. N.L.R.B. v. J. L. Brandeis & Sons, 8 Cir., 1944, 145 F.2d 556, 565, certiorari denied, 1944, 323 U.S. 751, 65 S.Ct. 85, 89 L.Ed. 601; N.L.R.B. v. Whittier Mills Co., 5 Cir., 1940, 111 F.2d 474, 479. Where, however, as here, disparaging remarks by supervisory employees are joined with threats of economic reprisal and loss of privileges, they may be used to indicate a course of conduct coercive in nature. See N.L.R.B. v. American Laundry Machinery Co., 2 Cir., 1945, 152 F.2d 400. Certainly the foremen threats concerning loss of privileges including rest periods, vacations and bonuses are a violation of § 8(1) of the Act. See H. J. Heinz Co. v. N.L.R.B., 1941, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309. But the respondent contends that it is not chargeable with responsibility for these foremen activities since respondent's president at the commencement of the Union campaign had called a meeting of supervisory personnel and explicitly instructed them not to interfere with the union activity of the employees. The purport of these instructions was not conveyed generally to the employees although there was testimony that some few knew of the position that the president had taken. But the Heinz case has held that where the employer may gain advantage from such unauthorized foremen anti-union activities it is within the Board's province to prevent repetition thereof by its order. H. J. Heinz Co. v. N.L.R.B., supra, 311 U.S. at page 520, 521, 61 S.Ct. 320, 85 L.Ed. 309. See also N.L.R.B. v. Brezner Tanning Co., 1 Cir., 1944, 141 F.2d 62; N.L.R.B. v. Franks Bros. Co., supra; Birmingham Post Co. v. N.L.R.B., 5 Cir., 1944, 140 F.2d 638. Had the employer posted notices to the effect of the instructions given the foremen, or otherwise communicated this information to the employees, the remarks of the foremen might then have been shorn of their coercive effect. See North Carolina Finishing Co. v. N.L.R.B., 4 Cir., 1943, 133 F.2d 714, 716, certiorari denied 1943, 320 U.S. 738, 64 S.Ct. 39, 88 L.Ed. 437.

The Board further supports its findings by referring to a letter of the respondent's president mailed to all employees shortly before the election and to a marked specimen ballot displayed on the company's bulletin board. Although this letter standing by itself does not literally threaten reprisals and may even be privileged under the First Amendment, the Board need not disregard such a letter which it finds is enmeshed with a course of conduct, in determining whether a course of conduct amounts to restraint or coercion. See N.L.R.B. v. Virginia Electric & Power Co., 1941, 314 U.S. 469, 477, 62 S.Ct. 344, 86 L.Ed. 348; Thomas v. Collins, 1945, 323 U.S. 516, 537, 538, 65 S.Ct. 315, 89 L.Ed. 430; N.L.R.B. v. American Tube Bending Co., 2 Cir., 1943, 134 F.2d 993, 146 A.L.R. 1017, certiorari denied 1943, 320 U.S. 768, 64 S.Ct. 84, 88 L.Ed. 459. And the Board may permissibly find that the employees might reasonably consider the letter as confirmation of the foremen's previous remarks which were definitely coercive. See N.L.R.B. v. American Laundry Machine Co., supra. Consequently the present holding of the Board cannot be considered as conflicting with a later case involving the same company where a similar letter was held not to be coercive in the absence of any other unlawful conduct. Bird Machine Co., 72 N.L.R.B. #81; 19 L.R.R.M. 1191 (1947).

The Board likewise considered that the display of the marked specimen ballot amounted to interference. In view of the conflicting evidence the Board could properly find that its presence was attributable to management. In order to safeguard the integrity of the secret ballot and its election procedure the Board may properly condemn such conduct as part of the totality of illegal conduct on the part of the respondent. See Sears Roebuck & Co., 47 N.L.R.B. 291, 11 L.R.R.M. 247 (1943).

In view of the above we find it impossible to say that the Board's finding that respondent engaged in unfair labor practices is not supported by substantial evidence. See N.L.R.B. v. Johnson Steel & Wire Co., 1 Cir., 1943, 134 F.2d 785, 787.

Respondent seeks to rebut the evidence relied upon by the Board and to discredit the Board's witness but our sole function is to determine whether there is enough evidence to warrant the Board's findings. The Board may if it chooses discount all contradictory evidence and it is within its province to judge the credibility of the witnesses and to weigh the evidence.

We are likewise convinced that the Board's finding that Favor was discriminatively discharged in violation of § 8(3) is supported by substantial evidence. Respondent discharged Favor on September 11, 1944 as part of a general curtailment of the labor force due to cancellation of certain war contracts. A total of 47 employees were laid off in the ensuing four weeks. Respondent seeks to justify Favor's dismissal on the basis of the lay-off policy of the company which is said to be based on seniority, ability and merit. But the Board found that 17 employees of less seniority were retained in departments in which the work done was comparable to that done by Favor while none with greater seniority was laid off. Although it was shown that most of these 17 employees were in a higher labor grade (i. e. a higher skill classification) than Favor, which would have justified their retention, there were several of these employees who were in the same labor grade as Favor and had a lower merit rating than he as well as less seniority. The respondent has not shown any satisfactory reason for this divergence from its asserted policy and it was therefore within the province of the Board to discredit respondent's contention concerning the reason for Favor's selection for lay-off.

In support of its finding that the discharge was discriminatory the Board relied on the remarks made to Favor by supervisory personnel at the time of his discharge. Although these remarks may not constitute direct evidence of the reason for the discharge, the Board, construing these remarks in the light of the anti-union incidents involving Favor which had occurred within the past two months, drew the inference that the nature of the discharge was discriminatory. It is the function of the Board to draw inferences from the evidence and the courts may not substitute their judgment for that of the Board. See N.L.R.B. v. Brezner Tanning Co., supra, 141 F.2d at page 64. Nor is it necessarily fatal that the Board's findings were not supported by direct evidence since it should be recognized that direct evidence is seldom attainable when seeking to probe an employer's mind to determine the motivating cause of his actions. See Martel Mills Corp. v. N.L.R.B., 4 Cir., 1940, 114 F.2d 624, 631; N.L.R.B. v. Abbott Worsted Mills, Inc., 1 Cir., 1942, 127 F.2d 438. Moreover the weight to be accorded the inferences drawn by the Board is augmented by the fact that the explanation of the discharge offered by the respondent did not stand up under scrutiny. N.L.R.B. v. Brezner Tanning Co., supra; N.L.R.B. v. Abbott Worsted Mills, Inc., supra. We therefore conclude that the Board has sustained the burden of proof and that there is substantial evidence to support the finding that the discharge was a violation of § 8(3) and to warrant the reinstatement and back pay order.

A decree will be entered enforcing the order of the Board.

MAGRUDER, Circuit Judge (concurring).

The letter which the president of respondent company sent to all employees on the eve of the election was, on its face, fair and temperate in tone. It set forth respondent's view that the past relationship between management and employees had been a satisfactory one; that grievances had been adjusted on an honest and fair basis; that the company had been guided by a broad rule of seniority in regard to promotions, choice of shifts, layoffs, etc.; that the company had followed a liberal wage policy, with extra bonuses when conditions warranted, and vacations with pay. The question was posed "whether you think you need a Union as your bargaining agent in order to get along fairly and successfully in this Company." On the other hand the letter emphasized the secrecy of the ballot; that the decision was for the employees to make; that the company recognized the right of the employees to join the United Steelworkers of America (C.I.O.), or any union of their choosing, and to select a un-

ion as bargaining agent if they so desired; that membership in any union "will not affect your position or your prospects in the Company."

Whether this letter was a lawful exercise of the employer's right of free speech, or constituted, in its particular context, an unfair labor practice, raises an issue of "peculiar gravity and delicacy." It is an issue which, it seems to me, this court is not now required to determine, for, as was true in National Labor Relations Board v. Reed & Prince Mfg. Co., 1 Cir., 1941, 118 F.2d 874, 889, 890, there was other evidence in the case sufficient to warrant the Board's finding that respondent had been guilty of unfair labor practices, and sufficient to support the Board's general cease and desist order which, I agree, we are obliged on this record to enforce.