Portsmouth Municipal Court,
No. 5200.

STATE *v.* CHARLES C. SPRAGUE.

Argued February 4, 1964.
Decided April 30, 1964.

356 

*William Maynard*, Attorney General and *Alexander J. Kalinski*, Assistant Attorney General (*Mr. Kalinski* orally), for the State.

*John C. Driscoll*, city solicitor (orally) and *Keesler H. Montgomery* (of Massachusetts) (by brief and orally), for the city of Portsmouth.

*Griffin, Harrington, Brigham & Taylor* (*Mr. Alvin E. Taylor* orally), for the defendant.

*Gordon M. Tiffany* (by brief and orally), amicus curiae.

KENISON, C.J. Discriminatory advertising relating to places of public accommodation, including barber shops, has been prohibited in this state and made a penal offense since 1919. RSA

ch. 354; Laws 1919, *c.* 27. By amendatory legislation in 1961 (Laws 1961, *c.* 219) this statute was broadened and extended to prohibit discrimination in places of public accommodation including barber shops and in certain rental housing. RSA ch. 354 (supp). The criminal penalty for violation is a fine "not less than ten nor more than one hundred dollars." RSA 354:4 (supp). Conviction of a discrimination "may not be used as evidence in a civil action for damages or as a basis for such a civil action in any manner whatsoever." RSA 354:5 (supp).

The statute upon which the criminal complaint is founded reads as follows: "Discrimination. No person shall directly or indirectly discriminate against persons of any race, creed, color, ancestry or national origin, as such, in the matter of board, lodging or accommodations, privilege or convenience offered to the general public at places of public accommodation or in the matter of rental or occupancy of a dwelling in a building containing more than one dwelling." RSA 354:1 (supp). The definition of a place of public accommodation includes a barber shop. "Definition. A place of public accommodation, within the meaning hereof, shall include any inn, tavern or hotel, whether conducted for entertainment, the housing or lodging of transient guests, or for the benefit, use or accommodation of those seeking health, recreation or rest, any restaurant, eating house, public conveyance on land or water, bathhouse, barber shop, theater, and music or other public hall." RSA 354:2.

For the purposes of this case only, in considering the defendant's motion to quash the complaint, the parties have assumed the facts stated in the criminal complaint to be true. The fundamental issue presented by the defendant's preliminary motion is whether the State may constitutionally forbid discrimination in places of public accommodation, since the motion to quash does not question that the barber shop is a place of public accommodation. Our consideration of the issue presented is accordingly restricted to determination of whether the statute may constitutionally be applied to a barber shop which is concededly a "place of public accommodation" as the term is commonly understood. *Markham* v. *Brown*, 8 N. H. 523; *Civil Rights Cases*, 109 U. S. 3, 40 (dissenting opinion). See Arterburn, The Origin and First Test of Public Callings, 75 U. Pa. L. Rev. 411. In this case it is unnecessary to determine whether the statute may constitutionally be applied to other places included in the statutory "definition" (RSA 354:2) or to multiple dwelling rental housing. RSA 354:1 (supp).

While a state may not be required to enact a statute forbidding discrimination in privately owned places of public accommodation, it unquestionably has the power to do so. *Railway Mail Ass'n* v. *Corsi*, 326 U. S. 88; *District of Columbia* v. *Thompson Co.*, 346 U. S. 100; Greenberg, Race Relations and American Law, 101-107 (1959). "Nor does there remain much basis for questioning the constitutionality of statutes applying to public accommodations . . . ." Note, The Right to Equal Treatment: Administrative Enforcement of Antidiscrimination Legislation, 74 Harv. L. Rev. 526, 586 (1961). The defendant's contention that the New Hampshire statute (RSA 354:1 (supp), 2, prohibiting discrimination in places of public accommodation including barber shops violates the due process clause of the Fourteenth Amendment has been rejected by the rationale of the authorities cited above as well as a majority of the cases of an earlier vintage. *People* v. *King*, 110 N. Y. 418; *Pickett* v. *Kuchan*, 323 Ill. 138; *Bolden* v. *Grand Rapids Operating Corp.*, 239 Mich. 318; Annot. 40 A. L. R. 505; 87 A. L. R. 2d 120, 165.

The defendant claims a violation of the equal protection clause of the Fourteenth Amendment because it applies to barber shops but not expressly to certain other businesses. Historically barber shops have been equated with places of public accommodation from an early date. *Messenger* v. *State*, 25 Neb. 674 (1889); 4 Hart, Commonwealth History of Massachusetts 584 (1930); Fox, Discrimination and Antidiscrimination in Massachusetts Law, 44 B. U. L. Rev. 30, 59 (1964); Annot. 87 A. L. R. 2d 120, 165. "There is no constitutional requirement that regulation must reach every class to which it might be applied, — that the legislature must regulate all or none . . . The State is not bound to cover the whole field of abuses." *Welch Co.* v. *State*, 89 N. H. 428, 432. The Legislature may hit the evils it considers ripe for correction without enumerating the lesser ones if there is a rational basis for the regulatory classification. *Manchester Sav. & Loan Ass'n* v. *State Tax Commission*, 105 N. H. 17. It is unlikely that any rational and bona fide legislative attempt to reduce discrimination would be declared in violation of the Fourteenth Amendment. Compare *Colorado Anti-Discrim. Comm'n* v. *Continental*, 372 U. S. 714, 721: "Any state or federal law requiring applicants for any job to be turned away because of their color would be invalid under the Due Process Clause of the Fifth Amendment and the Due

Process and Equal Protection Clauses of the Fourteenth Amendment." While this case involved interstate commerce, it indicated a hospitable attitude in favor of a state statute prohibiting discrimination in the hiring of pilots by an interstate air carrier. We see no violation of the equal protection clause of the Fourteenth Amendment in the provisions of RSA ch. 354 (supp). Comment, Equal Protection and Discrimination in Public Accommodations, 32 Fordham L. Rev. 327 (1963).

The defendant argues that the statute prohibiting discrimination by barbers on account of race subjects him to forced labor and constitutes involuntary servitude under the Thirteenth Amendment. There is some support for this view in occasional dicta, dissenting opinions and comment. *Browning* v. *Slenderella Systems*, 54 Wash. 2d 440, 454-457 (dissenting opinion); Avins, Freedom of Choice in Personal Service Occupations: Thirteenth Amendment Limitations on Antidiscrimination Legislation, 49 Cornell L. Q. 228 (1964). We have discovered little authority on this point as it relates to antidiscrimination legislation affecting barbers. See *Gegner* v. *Graham*, Court of Appeals of Greene County, Ohio, decided January 3, 1964 which held that the Ohio statute as applied to a barber was constitutional; Stephenson, Race Distinctions in American Law 129-130 (1910).

The Thirteenth Amendment is not to be construed to prevent a state from requiring equal opportunity in public accommodations or the performance of certain affirmative acts pursuant to legislation enacted under the police power. See *Ule* v. *State*, 208 Ind. 255; *International Union* v. *Wisconsin Employment Relations Board*, 336 U. S. 245, 251; *Crews* v. *Lundquist*, 361 Ill. 193. The Supreme Court "has had several occasions to reject over-extended conceptions of 'involuntary servitude.'" Corwin, The Constitution and What It Means Today 243 (1954). While the concept of balancing competing rights has not been favored in some quarters, we may still be forced to balance "the constitutional right against racial . . . discrimination on the one hand, with the freedom of the private citizen to engage in his personal discrimination as he wishes." Williams, The Twilight of State Action, 41 Tex. L. Rev. 347, 372 (1963); Lewis, The Sit-In Cases: Great Expectations, 1963 Supreme Court Review (Kurland *ed.*) 101, 121. We cannot believe that enforcement of the right against racial discrimination in public places will be considered involuntary servitude. See *Lombard* v. *Louisiana*, 373 U. S. 267; *Peterson* v. *Greenville*, 373 U. S. 244. Until

a more definitive answer is forthcoming, we hold that the state police power may enforce its public policy against discrimination by legislation such as RSA ch. 354 (supp). Whatever the proper rationale may be, the Supreme Court has "made it clearer than ever before that the Negro was entitled under our Constitution to equal status with a white person." Bischoff, Constitutional Law and Civil Rights, 1963 Annual Survey of American Law 1, 3, 22-28.

The Ninth Amendment to the United States Constitution provides as follows: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage other retained by the people." This amendment does not preclude the state under its police power from implementing racial equality. "When men enter into a state of society, they surrender up some of their natural rights to that society, in order to ensure the protection of others . . . ." N. H. Const., Part I, *Art.* 3d.

This state has declared as its public policy that there shall be no discrimination in services offered in places of public accommodation. It is policy that is definite, clear and unambiguous. As applied to the allegations of the complaint, the statute is constitutional. See *Massachusetts Commission Against Discrimination* v. *Colangelo*, 344 Mass. 387; *Burks* v. *Poppy Construction Co.*, 57 Cal. 2d 463. Powell, The Relationship Between Property Rights and Civil Rights, 15 Hastings L. J. 135 (1963). The defendant's motion to quash states no ground for relief.

*Remanded.*

BLANDIN and WHEELER, JJ., concurred in the result; the others concurred.