71 Wn.2d 245 (1967)
427 P.2d 968
In the Matter of JANGABA AUGUSTINE JOHNSON.
J.M. WHEELER, Appellant,
v.
WASHINGTON STATE BOARD AGAINST DISCRIMINATION, Respondent.[*]
No. 38515.
The Supreme Court of Washington, En Banc.
May 15, 1967.
Bantz & Hemovich and Michael J. Hemovich, for appellant.
The Attorney General, Morton M. Tytler and Charles B. Roe, Jr., Assistants, for respondent.
Francis Conklin, amicus curiae.
HAMILTON, J.
J.M. Wheeler, a licensed barber and the owner of Wheeler's Barber Shop in downtown Spokane, refused to cut Jangaba Augustine Johnson's hair. Mr. Johnson is a citizen of Liberia, Africa, the son of the Minister of Culture of Liberia, and, at the time of the incident, was a student at Gonzaga University under a Fulbright scholarship. Mr. Wheeler, who was 76 years of age at the time of the incident, concedes he refused barbering service because of Mr. Johnson's race.
A complaint was filed with the Washington State Board Against Discrimination (hereafter referred to as the Board). Conciliation efforts failed, and a hearing was duly scheduled before a properly designated hearing tribunal. The facts were stipulated, and the hearing tribunal found that Wheeler's Barber Shop was a place of public accommodation as defined in RCW 49.60.040,[1] and that Mr. *247 Wheeler's conduct toward Mr. Johnson was discriminatory and constituted an unfair practice as defined in RCW 49.60.215.[2]
The tribunal then issued an order requiring Mr. Wheeler to cease and desist from discriminating between customers in his barber shop because of their race, creed, color, or national origin. In addition, the tribunal directed that Mr. Wheeler take the following additional steps:
(1) Mr. Jangaba A. Johnson, Robinson Hall, Gonzaga University, Spokane, Washington, will be advised by letter that he, and all other persons, without regard to their race, creed, color or national origin, will be served as customers *248 of respondent, under the same uniform terms and conditions as apply to all other customers. The letter will be mailed to Mr. Johnson and a true copy mailed to the Washington State Board Against Discrimination, General Administration Building, Olympia, Washington, within five days after this order is served on respondent.
(2) Mr. J.M. Wheeler will advise all employees in his shop in writing of the Washington State Law Against Discrimination and of each such employee's responsibility for making the law meaningful and effective. A copy of this notification signed by all employees will be forwarded by mail to the Washington State Board Against Discrimination, 1411 Fourth Avenue Building, Seattle, Washington. This paragraph shall apply to present employees in Wheeler's barber shop and shall apply for a period of one year from the date this order is served on respondent to all future employees in any barber shop operated or owned by J.M. Wheeler.
(3) Mr. J.M. Wheeler will post and maintain in a conspicuous place in his barber shop, where customers entering the shop may easily see it, a copy of a poster, furnished by the Washington State Board Against Discrimination, stating that this is a place of public accommodation subject to the Washington State Law Against Discrimination and that all persons are entitled to be served under the same uniform terms and conditions, regardless of race, creed, color or national origin. The poster will be maintained for a period of not less than one year from the date this order is served on respondent.
Mr. Wheeler appealed to the Superior Court for Spokane County. The superior court sustained the order and appeal to this court followed.
On appeal Mr. Wheeler makes two principal contentions: (1) The order compelling him to send to the Board copies of the letter to Mr. Johnson and the written notification to his employees violates the self-incrimination and due process provisions of the fifth and fourteenth amendments to the United States Constitution and Const. art. 1, §§ 3 and 9; (2) the order compelling him, as a barber, under threat of criminal sanction, to serve customers regardless of their race, creed, color, or national origin amounts to involuntary servitude and violates the thirteenth amendment to the *249 United States Constitution and the federal anti-peonage statute (14 Stat. 546, 42 U.S.C. § 1994 (1964)).
[1] We cannot agree with appellant's first contention. The pertinent statutory provisions (RCW 49.60.250 and 49.60.310),[3] upon which the Board's order and appellant's contention are in part predicated, do not purport to penalize him for failure to affirmatively report his own "crimes," i.e., his past or future noncompliance with the law against discrimination. Rather the penalty for noncompliance, if any arises from his failure to report as directed by the order, basically and necessarily must spring from a willful failure or refusal on his part to conduct his business on a nondiscriminatory basis. The Board's order, therefore, does not compel him to incriminate himself, and the statute does not purport to punish him for refusing to give evidence against himself. Indeed, in this latter respect RCW 49.60.150,[4] indirectly, if not directly, provides immunity to *250 one who is required by the Board to submit self-incriminatory evidence.
Neither appellant nor amicus curiae have furnished any authorities which hold that an order of this type violates the constitutional privilege involved.
The appellant cites Malloy v. Hogan, 378 U.S. 1, 12 L.Ed.2d 653, 84 Sup. Ct. 1489 (1964), which holds that a person may not be compelled to give answers which would furnish a link in the chain of evidence needed to prosecute. He does not advise us, however, what link would be supplied by his report of compliance with the Board's order.
Amicus curiae relies heavily on Albertson v. Subversive Activities Control Bd., 382 U.S. 70, 15 L.Ed.2d 165, 86 Sup. Ct. 194 (1965). That case is clearly distinguishable. The petitioners there protested that if they registered as members of the Communist Party these admissions could be used against them in prosecutions under the Smith Act (18 U.S.C. § 2385 (1964)) or under § 4(a) of the Subversive Activities Act, 64 Stat. 991, 50 U.S.C. 783(a) (1964), to mention only two federal criminal statutes. The United States Superme Court found merit in this contention because the very membership in the party which they were required to report constituted the substance of the crimes under those statutes.
But an analogous situation does not exist here. Compliance with the Board's order does not subject the appellant to any liability or penalty. On the contrary  it exonerates him. If he were required to report noncompliance, a different question might arise.
In passing, it should be observed that the National Labor Relations Act (29 U.S.C. § 160(c)) contains language comparable to RCW 49.60.250 with respect to requiring compliance reports. Although the parties have furnished us with no authorities construing or applying the pertinent language of the National Labor Relations Act, it is interesting to note that the United States Supreme Court and some circuit courts have approved orders entered by the National Labor Relations Board requiring the posting and mailing of certain "cease and desist" statements. Cf. NLRB v. Falk *251 Corp., 308 U.S. 453, 84 L.Ed. 396, 60 Sup. Ct. 307 (1940); NLRB v. Express Publishing Co., 312 U.S. 426, 85 L.Ed. 930, 61 Sup. Ct. 693 (1941); NLRB v. American Laundry Mach. Co., 152 F.2d 400 (2d Cir.1945); NLRB v. Clark, 176 F.2d 341 (3d Cir.1949).
Also somewhat analogous is the requirement of reporting income for income tax purposes. In the case of United States v. Sullivan, 274 U.S. 259, 71 L.Ed. 1037, 47 Sup. Ct. 607, 51 A.L.R. 1020 (1927), it was contended that the requirement of a report forced the defendant to incriminate himself. Of this contention, the United States Supreme Court observed, at 263:
As the defendant's income was taxed, the statute of course required a return. See United States v. Sischo, 262 U.S. 165. In the decision that this was contrary to the Constitution we are of opinion that the protection of the Fifth Amendment was pressed too far. If the form of return provided called for answers that the defendant was privileged from making he could have raised the objection in the return, but could not on that account refuse to make any return at all. We are not called on to decide what, if anything, he might have withheld. Most of the items warranted no complaint. It would be an extreme if not an extravagant application of the Fifth Amendment to say that it authorized a man to refuse to state the amount of his income because it had been made in crime. But if the defendant desired to test that or any other point he should have tested it in the return so that it could be passed upon. He could not draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law. Mason v. United States, 244 U.S. 362. United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S. 103. In this case the defendant did not even make a declaration, he simply abstained from making a return.
For the reasons stated, we find no constitutional disability of the nature urged by appellant in either our statutory provisions or the Board's order in this case.
By his second assignment of error Mr. Wheeler challenges the order directing him, as a barber, to furnish tonsorial services to customers regardless of their race, creed, *252 color, or national origin. He contends this amounts to involuntary servitude and violates the thirteenth amendment to the United States Constitution and the federal anti-peonage statute.
We find no merit in this contention.
RCW 49.60.040 defines a place of public accommodation as including, but not limited to
... any place, licensed or unlicensed, kept for gain, hire or reward, or where charges are made for admission, service, occupancy or use of any property or facilities, ... or for the sale of goods, merchandise, services, or personal property, or for the rendering of personal services, ....
[2] This definition is broad and inclusive. It specifically includes facilities making charges for the rendition of personal services. In our opinion it embraces barber shops of the kind operated by Mr. Wheeler. Cf. Browning v. Slenderella Systems of Seattle, 54 Wn.2d 440, 341 P.2d 859 (1959). See also Sellers v. Philip's Barber Shop, 46 N.J. 340, 217 A.2d 121 (1966); Pinkney v. Meloy, 241 F. Supp. 943 (N.D. Fla. 1965); and State v. Sprague, 105 N.H. 355, 200 A.2d 206 (1964).
[3] The United States Supreme Court, in the case of Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 13 L.Ed.2d 258, 85 Sup. Ct. 348 (1964), fully answers Mr. Wheeler's Thirteenth Amendment argument. In upholding the United States Civil Rights Act of 1964 against such an attack, that court stated, at 261:
We find no merit in the remainder of appellant's contentions, including that of "involuntary servitude." As we have seen, 32 States prohibit racial discrimination in public accommodations. These laws but codify the common-law innkeeper rule which long predated the Thirteenth Amendment. It is difficult to believe that the Amendment was intended to abrogate this principle. Indeed, the opinion of the Court in the Civil Rights Cases is to the contrary as we have seen, it having noted with approval the laws of "all the States" prohibiting discrimination. We could not say that the requirements of the Act in this regard are in any way "akin to African slavery." Butler v. Perry, 240 U.S. 328, 332 (1916).
*253 We are in accord with the views thus expressed.
[4] Likewise, we find no substance to the argument that the Board's order violates the Federal Anti-Peonage Act.[5] The legislative purpose of the Anti-Peonage Act was to implement the Thirteenth Amendment by striking down all laws and usages in the states and territories which attempted to maintain and enforce the involuntary service of any person as a peon, in liquidation of any debt. Clyatt v. United States, 197 U.S. 207, 49 L.Ed. 726, 25 Sup. Ct. 429 (1905); Bailey v. Alabama, 219 U.S. 219, 55 L.Ed. 191, 31 Sup. Ct. 145 (1911); United States v. Reynolds, 235 U.S. 133, 59 L.Ed. 162, 35 Sup. Ct. 86 (1914); Taylor v. Georgia, 315 U.S. 25, 86 L.Ed. 615, 62 Sup. Ct. 415 (1942); Pollock v. Williams, 322 U.S. 4, 88 L.Ed. 1095, 64 Sup. Ct. 792 (1944). Peonage is defined as "a status or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness.... Upon this is based a condition of compulsory service." Clyatt v. United States, supra, at 215. The statute simply has no relationship to furnishing goods or services in places of public accommodation on a nondiscriminatory basis.
The judgment is affirmed.
FINLEY, C.J., HILL, DONWORTH, WEAVER, ROSELLINI, HUNTER, and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.
NOTES
[*] Reported in 427 P.2d 968.
[1] "As used in this chapter:

"....
"`Any place of public resort, accommodation, assemblage or amusement' includes, but is not limited to, any place, licensed or unlicensed, kept for gain, hire or reward, or where charges are made for admission, service, occupancy or use of any property or facilities, whether conducted for the entertainment, housing or lodging of transient guests, or for the benefit, use or accommodation of those seeking health, recreation or rest, or for the burial or other disposition of human remains, or for the sale of goods, merchandise, services, or personal property, or for the rendering of personal services, or for public conveyance or transportation on land, water, or in the air, including the stations and terminals thereof and the garaging of vehicles, or where food or beverages of any kind are sold for consumption on the premises, or where public amusement, entertainment, sports or recreation of any kind is offered with or without charge, or where medical service or care is made available, or where the public gathers, congregates, or assembles for amusement, recreation or public purposes, or public halls, public elevators and public washrooms of buildings and structures occupied by two or more tenants, or by the owner and one or more tenants, or any public library or educational institution, or schools of special instruction, or nursery schools, or day care centers or children's camps: Provided, That nothing herein contained shall be construed to include or apply to any institute, bona fide club, or place of accommodation, which is by its nature distinctly private, including fraternal organizations, though where public use is permitted that use shall be covered by this chapter; nor shall anything herein contained apply to any educational facility, columbarium, crematory, mausoleum, or cemetery operated or maintained by a bona fide religious or sectarian institution; ...." RCW 49.60.040.
[2] "It shall be an unfair practice for any person or his agent or employee to commit an act which directly or indirectly results in any distinction, restriction, or discrimination or the requiring of any person to pay a larger sum than the uniform rates charged other persons, or the refusing or withholding from any person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in any place of public resort, accommodation, assemblage, or amusement except for conditions and limitations established by law and applicable to all persons, regardless of race, creed, color, or national origin." RCW 49.60.215.
[3] "If, upon all the evidence, the tribunal finds that the respondent has engaged in any unfair practice it shall state its findings of fact and shall issue and file with the board and cause to be served on such respondent an order requiring such respondent to cease and desist from such unfair practice and to take such affirmative action, including, (but not limited to) hiring, reinstatement or upgrading of employees, with or without back pay, an admission or restoration to full membership rights in any respondent organization, or to take such other action as, in the judgment of the tribunal, will effectuate the purposes of this chapter, and including a requirement for report of the matter on compliance." (Italics ours) RCW 49.60.250.

"Any person that wilfully resists, prevents, impedes, or interferes with the board or any of its members or representatives in the performance of duty under this chapter, or that wilfully violates an order of the board, is guilty of a misdemeanor; but procedure for the review of the order shall not be deemed to be such wilful conduct." RCW 49.60.310.
[4] "No person shall be excused from attending and testifying or from producing records, correspondence, documents or other evidence in obedience to the subpoena of the board or of any individual member, on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture, but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, except that such person so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying. The immunity herein provided shall extend only to natural persons so compelled to testify." RCW 49.60.150.
[5] "The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void." 14 Stat. 546, 42 U.S.C. § 1994 (1964).